Sparrow *agt*. Kingman.

SPARROW, plaintiff in error, *agt*. KINGMAN, defendant in error.

*Questions disçussea.*

1. Whether. the evidence in this case (*action for ejectment for dower*,) showed that the husband of defendant could have had no estate or interest in the premises in question, beyond that of a term of years, under a lease of surplus waters; and, therefore, the plaintiff was not entitled to dower?

2. Whether the actual possession and use of the premises, by the plaintiff's husband—building mills thereon, and claiming to be the owner for four years—proved such an estate or seizen in the husband, as entitled her to dower therein?

3. Whether, where the defendant held the premises in question under a *quit claim deed* from the plaintiff's husband, and was in possession, he was *estopped* from showing that plaintiff's husband had *no title?*

4. Whether the offer of defendant to show that plaintiff's husband never had any title to the premises in question, was properly excluded?

THIS was an action of ejectment, tried at the Erie circuit, before the Hon. N. DAYTON, circuit judge, January, 1846.

The premises are described in the declaration, as follows : One sixth part of all that certain piece or parcel of land, situate in the village of Black Rock, in the county of Erie, known as seventy feet, commencing at the point where the Black Rock dam adjoins the pier of the ship lock; thence westerly on the said dam, seventy feet; thence at right angles with the southerly line of the said dam, to the north line of the said dam; thence easterly to said pier; thence southerly along said pier to the place of beginning, with the appurtenances thereunto belonging, as her reasonable dower, as the widow of George G. Kingman, deceased, late the husband of the said Elizabeth Kingman.

On the trial, the marriage of the plaintiff with George G. Kingman, and his death, were admitted.

The plaintiff then proved by Amos Root, that he knew the Erie mills—that he is a miller by occupation, and has charge of said mills—he knew Kingman in 1837, 1838, 1839 and 1840.

Sparrow *agt.* Kingman.

Kingman & Durfee built the Erie mills, and occupied them together in those years, claiming to be the owners of the premises; and the premises in the declaration were the premises on which the Erie mills were built; that Sparrow, the defendant, was in possession of the mills in June, 1844, and has been ever since that time.

The defendant then proved, on the *cross-examination*, that the Black Rock dam was a dam in the Niagara river, connecting the main shore with Squaw Island; that vessels of a large class are accustomed to go to the Erie mills, both above and below the dam, and lade and unlade, and that it is part of the public works connected with the Erie canal.

The plaintiff's counsel then read, from volume 63 of the records of deeds, in the Erie county clerk's office, at page 136, a quit-claim deed, from Kingman to S. J. Holley, covering the premises in question. This deed was without date, as to the particular day in February, 1841, but was acknowledged on the 16th February, 1841.

The plaintiff also read from volume 68, of the same records, at page 70, a quit-claim deed from Philo Durfee to Sparrow, the defendant, dated August 13, 1841, conveying the equal undivided half of the same premises.

She also read from the same volume, at page 68, a quit-claim deed of all the said described premises, from Sparrow and Holley, to Ira B. Cary, dated April 22, 1842.

It appears from the case, that the two last mentioned deeds contained a clause, as follows:—" The intention hereof, being to grant and convey to the parties of the second part, the one-fourth of all the land and water power, right, privileges and franchises, hereditaments, powers and appurtenances, heretofore granted and conveyed to Philo Durfee and George G. Kingman, in and by a certain deed, executed by Lewis F. Allen, William F. P. Taylor and Isaac S. Smith, dated on or about the 29th day of June, in the year 1837, and recorded, &c. And also the Erie mills, and warehouse connected therewith."

The plaintiff proved that Sparrow was in possession of the

Erie Mills, as tenant of Ira B. Cary, his landlord, under a lease.

The plaintiff here rested.

The defendant then called upon the plaintiff to read the deed from Allen, Smith & Taylor, referred to in the deeds she read.    The plaintiff declined.

The defendant's counsel then called upon the court to decide that the plaintiff was bound to read the deed, as part of her case, as it was referred to in some of the deeds read by her.

The court declined so to decide, and the defendant excepted to the decision.

The court said the defendant might read the deed from Allen, Smith & Taylor in evidence, without prejudice to his right to move for a non-suit on the whole evidence, after it was read; and it was read, as follows:

This indenture, made this 29th day of June, in the year 1837, between Lewis F. Allen, William F. P. Taylor & Isaac S. Smith, of the first part, of the town of Buffalo, in the county of Erie, by virtue of the trusts, powers and authority conferred upon them, by and under the conveyance creating the association known as the Niagara City Association, and George G. Kingman & Philo Durfee, of the same place, of the second part, witnesseth: that the said parties of the first part, in consideration of $3,500, have granted, bargained, sold, conveyed, assigned and transferred, and by these presents do grant, bargain, sell, convey, assign and transfer unto the said parties of the second part, their heirs and assigns forever, " All that certain piece or parcel of land, situate in the village of Black Rock, in the said town, known as seventy feet, commencing at the point where the Black Rock dam adjoins the pier of the ship lock; thence westerly, on the said dam, seventy feet; thence at right angles with the southerly line of said dam, to the north line of the dam; thence easterly to the said pier; thence southerly along said pier, to the place of beginning; it being intended hereby, to grant the one-fourth of the said dam, if the same shall exceed seventy feet, above described; and if

not, then to convey the said seventy feet only, together with a water power sufficient for nine run of stone, whether the said one quarter shall be equal to that water power, or not; and in case the water power, when used in equal proportions on the said dam, shall exceed for one-fourth of the said power, for the said nine run, then the said parties of the second part shall have, hold and enjoy all the water power which shall appertain to the said one-fourth of the said dam, to have and to hold the said premises, together with the water power hereby granted to the said parties of the second part, and their heirs and assigns forever, as fully and as perfectly as the same were conveyed by the state of New-York, and as the same now exists, excepting and reserving from the premises hereby conveyed, thirty feet in front of any mill which the said parties of the second part shall erect, and in extension of the street as a public highway. Provided always, and it is hereby expressly understood and agreed between the said parties, that the said parties of the second part, or their heirs or assigns, shall not create any erections southerly of a line drawn from the south end of the ship lock, running westerly in a line parallel with the said dam, nor shall they create any erections north of a line running parallel with the above mentioned line, and distant therefrom 150 feet; and the said parties of the second part, in consideration of the said grant, do hereby, for themselves, their heirs and assigns, covenant and agree to and with the said parties of the first part, and their legal representatives, that they will at all times hereafter pay off and discharge the one-fourth part of the rent reserved by the state of New-York, on the lease of the said water power, on the said dam.

In witness whereof, the said parties have hereto set their hands and seals, the day and year first above written.

In presence of

H. J. STOW.

L. F. ALLEN,          [L. s.]
W. F. P. TAYLOR,      [L. s.]
ISAAC S. SMITH,       [L. s.]
G. G. KINGMAN,        [L. s.]
PHILO DURFEE,         [L. s.]

*Erie County, ss.*

On this 26        1837, before me came Horátio J. Stow, to me known, and he being by me duly sworn, said that he knew Lewis F. Allen, William F. P. Taylor, Isaac S. Smith, George G. Kingman and Philo Durfee, the persons described in, and who executed the within instrument, and that he saw each of them execute the same, and that he set his name thereto, as a witness to its execution, and that he resides in the city of Buffalo.

D. TILLINGHAST, <em>Sup. Court Com'r.</em>

The defendant then moved for a non-suit, on the ground that all the evidence, taken together, showed that Kingman had no estate in the premises of which his wife could be endowed.

The court overruled the motion, and the defendant excepted to the decision.

The defendant then opened his defence, and offered to show, to establish that Kingman never had an estate, of which his wife was dowable,

1. That all the right Kingman ever had, was a right to draw water from Black Rock harbor, or the Black Rock dam, as the assignee of the lessees of the state of New-York, of the surplus water to be drawn from said harbor, under a sale of that right, made by the canal commissioners, in 1826, under the law relating to the Erie and Champlain canals, at an annual rent, to be paid to the state.

This evidence was objected to by the plaintiff, and overruled by the court, and the defendant excepted to the decision.

2. That Kingman never had any title to the premises.

This evidence was objected to by the plaintiff, and overruled by the court, and the defendant excepted to the decision.

3. That the defendant held a mortgage in fee of the premises in question, of Kingman & Durfee, to Dows & Cary, that had become forfeited, upon which Kingman had written an endorsement, that his interest was only a leasehold estate of 999 years.

Sparrow *agt.* Kingman.

This evidence was objected to by counsel for the plaintiff, and rejected by the court. The defendant's counsel excepted to the decision.

The court then decided, that as Kingman, when in possession, had, by his deed to Holley, assumed to convey a fee, and as the defendant held under that deed, he was bound by it, and was estopped from setting up that Kingman had not an estate of which his wife was dowable, and that upon the evidence given, the plaintiff was entitled to a verdict.

The defendant's counsel excepted to such decision, and every part thereof.

The jury found a verdict for the plaintiff, and the judge signed and sealed the bill of exceptions, and directed the cause to be carried to the supreme court, without being heard by him on the bill of exceptions.

The supreme court, in July term, 1846, sustained the verdict, and gave judgment for the plaintiff.

The defendant brought error for review, to the court of errors; and the proceedings were subsequently transferred to this court.

> *W. L. G. Smith, attorney,* and
> *H. S. Dodge, counsel,* for plaintiff in error.

*First.* The evidence of the plaintiff below, (*fol.* 23, *pp.* 8, 9,) and the deeds to Holley and Sparrow, (*p.* 9,) and of Allen and others, (*pp.* 11 *and* 12,) showed that Kingman, the husband of defendant, could have had no estate or interest in the premises in question, beyond that of a term of years, under a lease of surplus waters, executed by the canal commissioners, pursuant to the statutes ; and, perhaps, a license to erect mills on the public dam.

And the non-suit asked for on the trial, (*pp.* 12, 13,) ought to have been granted. (*See the statutes collected in* 1 *R. S.,* 3*d ed.,* *pp.* 261, 263, 266.)

Sparrow *agt.* Kingman.

*Second.* The 'circuit judge erred in excluding the evidence offered to show that Kingman never had any estate in the premises.   (*P.* 13.)

1. The acceptance by Holley of Kingman's quit-claim deed-poll to him, did not estop him, or those claiming under him, from showing that Kingman had no title.   An estoppel by acceptance of possession is only in *pais*, and, therefore, only applies to a lessee or other grantee, who is under obligation to restore the possession. (*Co. Littleton*, 352, *a ;  Watkins* v. *Holman*, 16 *Peters*, 25 ;  *Small* v. *Proctor*, 15 *Mass. R.* 499 ; *Osterhout* v. *Shoemaker*, 3 *Hill*, 518.)

☞ Grantee holds adversely to the grantor.   And no estoppel, except where the grantee is bound to restore the possession.

Mere acceptance of the deed creates no estoppel—except where possession to be restored.   Accepting deed is only an estoppel *in pais*—not by deed—when possession restored, the estoppel gone—all the cases agree. ☜

An acceptance of such a deed, does not even affect the character of the grantee's previous adverse possession.  (*Northrup* v. *Wright*, 7 *Hill*, 476.)

2. There can be no estoppel for want of mutuality.   Kingman himself would not have been estopped, by his quit-claim deed, from showing that no title passed by it. (*Jackson* v. *Hubbell*, 1 *Cow.* 616 ;  *Jackson* v. *Bradford*, 4 *Wend.* 622 ; *Jackson* v. *Waldron*, 13 *Wend.* 178 ;  *Bac. Leases o.*)

☞ Grant without warranty don't estop grantor from setting up an after acquired title.   Then grantee not estopped, because estoppels must be mutual. ☜

These cases show that an after acquired estate passes by estoppel, only when there are covenants of warranty, &c., and by way of avoiding circuity of action.

3. His widow would not be estopped, even if he had covenanted ; and, therefore, she cannot estop the grantee. (2 *Smith's Leading Cases*, *p.* 438 ;  *Jewell* v. *Harrington*, 19 *Wend.* 471 ; *Gaunt* v. *Wainman*, 3 *Bing. N. C.* 69.)

☞ Notes to 2d ed., cites all the cases—*directly in point.*

17 *Wend.*; *the first case* which establishes the principle—*cases there cited*, do not support the position. 1 *Caines*, 186; proof defendant holds under husband, *sufficient in first instance*. 6 *J.* 290; Kent, Ch. J.—*dictum* to this effect—but case was that wife might recover dower of equity of redemption. 2 *J.* 119; nothing more than 1 *Caines*. 7 *J.* 278; like 6 *John.* 9 *J.* 344; court say estopped—but case nothing more than 1 *Caines*. 15 *J.* 21; 1 *Caines*—nothing more. 5 *C.* 299; do. 12 *W.* 65; first case asserting this doctrine, *held*, estopped from saying husband was an alien. Wm. Jones, 317, only authority cited for this doctrine, by Kent and others—*argument of counsel*, only—[*no*—Judge Jones]—words are—Jones put Taylor's case, tenant for years makes feoffment and dies, widow brings dower—tenant pleads, husband not seized, and court all against him because feoffee *got a fee*. Though a tortious fee, it was a fee—*not a word about estoppel.*

4. The opposite doctrine was held by the supreme court, on the authority of *Bowne* v. *Potter*, (17 *Wend.* 164.)

*Sherwood* v. *Vandenburgh*, (2 *Hill*, 303,) adds nothing to the former case, there being another point decisive of that case.

And it is admitted by Mr. Justice Cowen, at *p.* 309, and afterwards by Ch. J. Bronson, in 3 *Hill*, at *p.* 519, that the rule is against principle.

5. The cases cited in *Bowne* v. *Potter*, as having settled the point in this state, will be found on examination to decide a very different point; some of them merely showing that proof of the husband's prior possession was sufficient *prima facie* evidence of seizin; and the others that a widow is entitled to dower against persons deriving a *tortious* or *defeasible* freehold and inheritance from the husband.

And this is the doctrine of the case cited by Sir W. Jones "*arguendo*" in his reports, *p.* 317, and which is the foundation of all the subsequent *dicta*.

*Third.* The circuit judge erred in excluding the evidence offered, to show that Kingman had an estate for years, or some other estate not of inheritance. (*P.* 13.)

1. The case of *Bowne* v. *Potter*, and the case of *Sherwood* v.

*Vandenburgh,* were cases where the offers were to show *no title* in the husband, not to show a *less estate,* and if they are conceded to be law, they do not determine this question.

2. There is no estoppel where an interest passes ; in other words, it may always be shown that a less estate passed than the estate mentioned in the deed, although it be an indenture. (*Treport's Case,* 6 *Rep.* 146 ; 2 *Williams' Saunders,* 418, *note* 1 ; 2 *Smith's Leading Cases,* 438, §§ 9, 457, 463, 470 ; 4 *Kent,* 98.)

*Fourth.* But the foundation of the argument to prove an estoppel, *i. e.,* in the words of the circuit judge, (*p.* 13,) that " by the deed to Holley, Kingman *assumed to convey a fee,*" wholly fails in the present case.

1. The deed is a mere quit claim and release, (*p.* 9,) and therefore only purports to convey the right that the grantor had, and for that reason never could operate as an estoppel. (*Right* v. *Bucknell,* 2 *B. and Ad.* 278.)

At most, the deed merely affirms that Kingman was entitled to a fee, *or some other estate,* and there could be no estoppel from such an uncertain recital, if it had been made expressly. (*Right* v. *Bucknell, ubi supra.*)

2. If there ever were any doubt of this point, there can be none since the provisions of the R. S.    (1 *R. S.* 738, 739, §§ 136, 140, 142, 143, 144, 145 ; *also* 1 *R. S.* 748, §§ 1, 2.)

The deed in this case was made in 1841, (*p.* 9.)    In the cases of *Bowne* v. *Potter* and *Sherwood* v. *Vandenburgh,* the deeds were executed before the revision of the statutes.

3. The deed, therefore, from Kingman to Holley, was intended and assumed to pass whatever estate and interest Kingman had, without defining it, and must be read as if it had expressly so stated its object.

And the statute (1 *R.* 739, § 143,) expressly prohibits the construction to the deed given by the circuit judge.

The judgment of the supreme court rendered, notwithstanding the exceptions, ought to be reversed, and a *venire de novo* awarded, with costs to abide the event.

☞ *Reply.*—Not a rule of property, in this case.    13 *W.*

Sparrow *agt.* Kingman.

546; 8 *Metc.* 290; as to 12 *W.*—got a good title, tho' defeasible—and so widow shall have dower—so 12 *W.* not against us. ☞

> *Greene & Sheldon, attorneys,* and
> *N. Hill, jr., counsel,* for defendant in error.

The plaintiff, Elizabeth Kingman, claims her right to dower in one-sixth part of the premises called the Erie mills, at Black Rock, described in the declaration at *page* 5, *folio* 10. She claims it as the widow of George G. Kingman, deceased, who, together with Philo Durfee, bought and owned the premises, and who, in 1837, built the Erie flouring mills, and possessed and occupied them during that year and 1838, 1839 and 1840, claiming the ownership. (*Page* 8, *fol.* 23.)

Erastus Sparrow is in possession as the tenant of Ira B. Cary, his landlord, under a lease, and therefore made defendant on the record. Ira B. Cary, his landlord, derives his possession, and title to one half of the premises, from George G. Kingman, the plaintiff's husband, and to the other half from Philo Durfee.

Kingman conveyed his half to Samuel J. Holley, and Durfee his half to Erastus Sparrow, and Sparrow and Holley conveyed to Cary. (*Page* 9, *fol.* 25.)

☞ 3 *R. S.* 595; revisers notes, shows statute not intended to be used as now attempted to use it. Defendants I—All the cases cited in 17 *Wend.* are misapprehended. ☞

*First.* The actual possession and use of the premises by the plaintiff's husband, building the Erie mills upon them, and claiming to be the owner in 1837, 1838, 1839 and 1840, proved such an estate or seizin in the husband, as entitles her to dower therein.

" The rule is, that the same evidence of seizin (or estate,) which would entitle the heir to recover in ejectment, will sustain an action for dower." (5 *Cowen,* 599.)

" And in such case, the seizin (or estate) of the deceased, is proved by showing his actual possession of the premises, or by

proving his receipt of the rent from the person in possession. This is presumptive evidence of seizin (or estate) in fee, and sufficient till the contrary appears." (2 *Phillips' Ev.* 282 ; *sanctioned in Jackson* v. *Walter,* 5 *Cow.* 301 ; *see same rule in* 1 *Caines,* 190 ; *Embree* v. *Ellis,* 2 *John.* 123.)

"The ordinary proof of seizin (or estate) in fee, is actual possession." (*Jacob's Law Dict. Seizin ; Co. Litt.* 152.)

Dower follows such a seizin (or estate.) (2 *Blackstone's Com.* 134.)

"Possession of land with a claim of title is *prima facie* sufficient evidence of seizin (or estate) in fee, even to sustain the demandant's claim in a writ of right. The seizin is proved by showing his actual possession of the premises." (*Carpenter* v. *Weeks,* 2 *Hill* 341 ; *Sherwood* v. *Vandenburgh,* 2 *Hil,* 303 ; *Bowne* v. *Potter,* 17 *Wend.* 164.)

The objection of proving the deed at *page* 9, *folio* 25, in connection with the seizin of the plaintiff's husband, is to show that the defendant's possession is from Kingman, and that he holds under Kingman's title.

*Second.* The defendant's motion for a non-suit was rightfully denied. (*Page* 12, *fol.* 41.)

The authorities above quoted, show the plaintiff was entitled to dower. The defendant's counsel chose to read the conveyance in fee of William F. P. Taylor, Lewis F. Allen and Isaac S. Smith, dated June 29, 1837, to Kingman & Durfee, of the premises in question, thus adding, to the husband's actual seizin, the strength of a paper title in fee.

Upon these premises, the Erie mills and warehouses had been erected by Kingman & Durfee, and the possession and title of the whole conveyed to the landlord of the defendant.

Did such proof entitle the defendant to a non-suit ?

*Third.* The court ruled correctly that the defendant (or Cary his landlord,) is estopped from denying the estate (or seizin) of the plaintiff's husband, inasmuch as he is in possession under the deed from Kingman, and holds by the same title that Kingman did. (*Page* 13, *fol.* 44.)

Sparrow *agt.* Kingman.

The defendant's counsel offered, at *page* 13, *folio* 42, in order to establish that Kingman never had an estate of which his wife was dowable, to show :

1. That all his right was a leasehold right to the water privilege granted by the state.

2. That he never had any title to the premises.

3. That he made his written endorsement upon the mortgage in fee of the premises in question, which Kingman and Durfee had executed to Dows and Cary, that his interest was only a leasehold interest of 999 years.

It is enough to remark that the 1st, if proved, would only have shown the water privilege, a leasehold estate; whereas, Kingman and Durfee had erected, on land conveyed to them by the deed of June 29, 1837, in order to enjoy the right to draw the water from the Black Rock dam, extensive and costly mills, and a warehouse. (*See Root's testimony, p.* 8, *fol.* 23 ; *and the description of the property in the deeds conveying to Cary, p.* 9, *fols.* 26, 27, 28, 29, 30, 31, 32 *and* 33.)

And as to the 3d, Kingman's endorsement on the mortgage in fee, could not affect his wife's right, where his mortgage deed did not.

The 2d is a mere repetition of the general offer at *folio* 42, *page* 13, to show that Kingman never had an estate of which his wife was dowable. Although it is denied that what was in fact offered in evidence by the defendant's counsel, did tend to show it, still, what the defence attempted was, to prove that Kingman had no such title as entitled the widow to her dower in the Erie mills.

It is claimed that Cary, (the landlord and the real defendant,) who derives both his possession and his title from the plaintiff's husband, and who is enjoying the *whole* of the estate under him, can bar the widow's right to the possession and enjoyment of the *portion* the law gives her out of the *same* estate, by proving that Kingman, the common source of the rights of *both*, did not, in fact, have any such interest or title while he lived. Can *he* debar her of the possession and enjoyment of the portion that belongs to her by the *same*, or as *good* a title as his

own to his portion, on the ground that he can prove that King-man, and therefore, neither of them, had no title? Good or bad, she has the same right to her's that he has to his, and he has none whatever to her's. (*Sherwood* v. *Vandenburgh*, 2 *Hill*, 303; *Bowne* v. *Potter*, 17 *Wend*. 164; *Davis* v. *Darrow*, 12 *Wend*. 65; 5 *Cow*. 301; *Embree* v. *Ellis*, 2 *Johns. Rep*. 123; *Hitchcock* v. *Harrington*, 6 *Johns. Rep*. 291; *Collins* v. *Torrey*, 7 *Johns. Rep*. 279; *Hitchcock* v. *Carpenter*, 9 *Johns. Rep*. 344; *Dolf* v. *Bassett*, 15 *Johns. Rep*. 21; 1 *Caines*, 190; 2 *Greenleaf*, 226; 6 *Greenleaf*, 243; 3 *B. Munroe*, 619, *same in principle* ; 1 *B. Munroe*, 290; 1 *Shepley*, 216; 4 *Dana*, 479, 464; 1 *Meigs*, 3.)

☞ Assumed on trial that deeds conveyed a fee—judge so said in his decision—deeds were there—not put in case—but, can't now say anything but a fee—Kingman in possession conveyed in fee—so precise case of 1 *Caines*. If all erroneous, have been acted on for one-half century as a rule of property; —now too late to question—*facit error communis jus. Noy's Max*. 32; 1 *S. & R*. 102, 105, 106; *Broom's Max*. 99; 5 *Cr*. 32; 23 *W*. 336, 340, 341; *Stare decisis*, 4 *Just*. 240; 1 *Peters' C. C*. 443. ☞

DECISION.—*Judgment reversed, with venire de novo, by the supreme court, costs to abide the event. For affirmance*—BRONSON, J. *For reversal*—JEWETT, Ch. J., RUGGLES, JONES, JOHNSON, WRIGHT and GRAY, JJ. GARDINER, J., having been engaged professionally in the cause, gave no opinion.

NOTE.—It was *held* by WRIGHT, J., that he was content to place his vote for reversal on the distinct ground that, in an action for dower, the grantee in fee of the husband is not concluded from affirmatively controverting the seizin of the latter.

JEWETT, Ch. J.—*Held*, that the plaintiff was not entitled to dower in any other lands than in which her husband, during marriage, was seized of an estate of inheritance; and that when she claims dower, the defendant is at liberty to show, in his defence, that her husband was not, during the marriage, seized of such an estate.

The court, in this case, were not authorized to say that Kingman assumed, by his deed (quit-claim,) to convey a fee; the clear intent, as well as expression of his deed, was to convey only what interest or estate he then had in the premises.

(*This decision overrules the principles settled by a series of cases determined by the supreme court, from Bancroft* v. *White,* 1 *Caines,* 185, *to Sherwood* v. *Vandenburgh,* 2 *Hill,* 303.)

BRONSON, J., *dissenting, held* that, as to one half of the Erie mills, the defendant derived his title and possession from George G. Kingman, the plaintiff's husband; and still held under that title. So long as he thus held, he was estopped from denying the seizin of the husband, in an action brought by the widow to recover her dower. (*Citing authorities.*) Questionable as he thought this doctrine was at the first, it had prevailed too long in this state to be now overturned by a judicial decision. If there was any good reason for changing the rule, the change should be made by the legislature, and not by the courts. So long as those claiming under the husband have not been disturbed in the enjoyment of the property, there was no very good reason for allowing them to defeat the widow's claim to dower, by setting up an outstanding title which might never be asserted; and the current of adjudication had not carried the estoppel beyond cases of that description.

*Reported* 1 *Comstock,* 242.